IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No.: 07-12 (ESH) |
| | : | |
| v. | : | |
| | : | |
| **QUEEN NWOYE,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

**OPPOSITION TO MOTION TO SUPPRESS STATEMENTS**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's motion to suppress statements at the trial. In support of its opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing on this motion.

In August, 2006, a local doctor reported to the FBI that Queen Nwoye and another individual had engaged in a conspiracy to extort money from him. The FBI conducted an investigation into the allegation. During the investigation, the FBI arranged for the doctor to engage in several telephone conversations with Nwoye, which were recorded with the doctor's consent but without Nwoye's knowledge.

The FBI eventually obtained an arrest warrant for Nwoye. On November 14, 2006, FBI Agents went to defendant Queen Nwoye's residence in Laurel, Maryland to execute the arrest warrant for Nwoye and search warrants for her vehicle and residence. Nwoye was arrested in the parking garage of her apartment complex, as she was preparing to leave for the day. While still in the parking garage, FBI Agent Ronacher advised Nwoye of her Miranda rights by reading them from a standard Advice of Rights form. After each sentence, the agent asked Nwoye if she understood

what had been read to her. She indicated that she understood and placed her initials beside each sentence on the form. Furthermore, Nwoye signed her name on the form, indicating that she understood her rights and was willing to answer questions without the aid of an attorney. The agents drove Nwoye to the FBI Field Office in Calverton, Maryland, where an interview was conducted. Nwoye made numerous incriminating statements during the interview.

The search warrant for Nwoye's residence included provisions that permitted the FBI to seize Nwoye's computer to look for incriminating evidence of the extortion scheme. The agents seized a computer from Nwoye's residence, and a forensic analysis of that computer yielded a number of complete and/or partial email messages from Nwoye that may constitute useful evidence against her. However, email messages by the defendant were obtained in two additional ways. First, the doctor provided the FBI with an email that Nwoye sent to a third party. That party sent the email to the doctor's wife, who emailed the message to the doctor, who turned it over to the FBI. Second, Nwoye's former attorney, Assistant Public Defender Michelle Peterson, provided emails to the government when Peterson sent an email to the undersigned AUSA, which attached several emails written by Nwoye.

The defendant has challenged the admission of: 1) the statements she made during her post-arrest interview; 2) the tape-recorded conversations she had with the doctor; and 3) the email messages she wrote regarding the extortion scheme. For the following reasons, the government submits that all of the statements are admissible.

1.  <u>The post-arrest statements are admissible</u>.

When the validity of a waiver of <u>Miranda</u> rights is challenged, the government is required to prove that the waiver was voluntary by a preponderance of the evidence. <u>Colorado v. Connelly</u>, 479 U.S. 157, 168 (1986).  Although the validity of the waiver is to be determined on a case-by-case basis, by examining the totality of the circumstances, <u>North Carolina v. Butler</u>, 441 U.S. 369, 374-375 (1979); <u>U.S. v. McNeil</u>, 433 F.2d 1109, 1112 (D.C. Cir. 1969), "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of the waiver...." <u>Butler</u>, 441 U.S. at 374-375.

"The administration of proper <u>Miranda</u> warnings, followed by a written waiver of the rights described in those warnings, will usually go far toward demonstrating that a decision to speak is not compelled.  If the written waiver is promptly followed by an actual confession, the likelihood that the waiver was valid is often further enhanced." <u>United States v. Yunis</u>, 859 F.2d 953, 961 (D.C. Cir. 1988) (citations omitted).  In this case, defendant Nwoye initialed and signed the Advice of Rights Form, thus indicating that she understood the <u>Miranda</u> warnings and wanted to make a statement without a lawyer present.  There is no evidence that she was coerced, and, in fact, the agents perceived that she was quite eager to unburden her conscious and confess.  In short, the defendant's statements were voluntary because they were the "product of an essentially free and unconstrained choice by its maker." <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 225-26 (1973) (citing <u>Columbe v. Connecticut</u>, 367 U.S. 568, 602 (1961)).

2. <u>The taped conversations are admissible</u>.

In order to further the investigation into the allegation that the defendant helped to extort the doctor, the FBI arranged for the doctor to tape record conversations between the doctor and the defendant, in which the doctor raised the issue of the extortion scheme in order to obtain incriminating statements by the defendant. The taped recorded conversations occurred on August 23, 2006 and October 13, 2006. The taping of those conversations was lawful, in accordance with 18 U.S.C. § 2511(2)(c), which provides:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

Since the doctor was a party to the communications, acting "under color of law," as authorized by the FBI, the taping was lawful and there is no reason to suppress the tape recorded conversations.

3. <u>The emails are admissible</u>.

The government has obtained, through various means, several emails written by Queen Nwoye to different individuals. The emails contain statements about the extortion of the doctor that could be considered incriminating. Thus, the emails are admissible as admissions by a party opponent, pursuant to Rule 801(d)(2), Fed. R. Evid. (See <u>U.S. v. Tann</u>, 425 F.Supp.2d 26, 37-38 (D.D.C. 2006) (emails from the defendant's computer were admissible as non-hearsay statements by the defendant under Rule 801(d)(2)).

WHEREFORE, the government respectfully requests that the defendant's motion to suppress statements be denied.

                                    Respectfully submitted,

                                    JEFFREY A. TAYLOR
                                  United States Attorney

By: _____
      Frederick Yette, DC Bar # 385391
      Assistant U.S. Attorney
      Federal Major Crimes Section
      555 4th Street, N.W.
      Washington, D.C. 20530
      (202) 353-1666
      Frederick.Yette@usdoj.gov