IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CRIMINAL NO. : 07-012 (ESH) |
| v. | : |
| **QUEEN NWOYE,** | : |
| Defendant. | : |

**GOVERNMENT'S OPPOSITION TO DEFENSE MOTION
FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's motion to suppress evidence at the trial. In support of its opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing on this motion.

A jury has convicted the defendant of Conspiracy to Commit Extortion. As a consequence of the guilty verdict, the defendant has now moved this Court to either acquit her or grant her a new trial. The government opposes the defendant's motions.

A. <u>There was sufficient evidence that the defendant participated in the Conspiracy</u>.

The victim of the conspiracy, Dr. Iweala, testified that two individuals worked together to extort money from him. The victim explained that Queen Nwoye telephoned him and asked him to contact her "cousin," whom she identified as "Ernest Ufondu," although trial testimony revealed that "Ufondu" was actually a man named Adriane Osuagwu. That initial phone call by the defendant initiated the scheme to extort the victim.

In fact, according to the victim, the defendant was an indispensable partner in the conspiracy. It was Nwoye who set up the doctor by calling him and inviting him to meet her in the hospital parking lot for a sexual rendezvous that eventually forced the doctor to pay the bulk of the extorted money. As a result of that doomed rendezvous, the doctor made two $50,000 wire transfers directly into Nwoye's bank account.

After Osuagwu negotiated several payments with the doctor, it was Nwoye who personally met with the doctor on three occasions to pick up the payments. Furthermore, although the doctor sent the final $30,000 payment directly into Osuagwu's bank account, bank records show that on the next day, Osuagwu gave Nwoye $5,000. In total, Nwoye kept at least $11,000 of the money extorted from the victim. Thus, there was ample evidence on which the jury could rely to determine that the defendant willingly and knowingly agreed to conspire with Osuagwu to extort the doctor.

B. <u>The Court properly declined to give a duress instruction to the jury</u>.

The defendant was not entitled to a duress instruction because she did not meet the requirements for presenting such an instruction to the jury. "A defendant may assert duress as an affirmative defense only if [s]he shows that [s]he acted under the threat of immediate death or serious bodily injury. . . . In addition, [s]he must show that [s]he had no reasonable legal alternative to committing the crime." <u>U.S. v. Gaviria</u>, 116 F.3d 1498, 1531 (D.C. Cir. 1997). Although Nwoye testified that the defendant hit her on various occasions during their relationship, and was sometimes nearby when she collected payments from the doctor, her testimony failed to establish a duress defense.

The defendant did not present evidence that she was ever under the threat of immediate death or serious bodily injury when she collected money from the doctor. The defendant was not beside her when she collected the money, and therefore could not have forced her to take the money or hurt her if she refused to take the doctor's money. Moreover, during the course of the conspiracy the defendant had the chance to call the police or someone else for help so that she could avoid participating in the conspiracy. See Gaviria, 116 F.3d at 1531 ("Naranjo's argument that he was not able to inform anybody of the threat to his daughter during the 13 months in which he participated, allegedly unwillingly, in the drug distribution conspiracy with Sanders borders upon the frivolous. Naranjo had ample opportunities to inform his daughter, his sister, his or his wife's lawyer, or prison officials about Sanders's alleged threat.") Since the defendant was not facing immediate injury or death during the conspiracy, and could have done something to avoid collecting the payments and participating in the conspiracy, she was not entitled to a duress instruction.

C. The prosecutor's closing and rebuttal arguments were not improper.

During the defendant's closing argument, the defense attorney argued that the defendant reported the extortion plot against the doctor by sending an email to a Nigerian law enforcement agency, the EFCC.[1] In response, either during the government's closing or rebuttal argument, the government argued that if the defendant sent an email to the EFCC, which was addressed to her uncle at the EFCC, that was not the same as reporting the crime to a law enforcement agency in the U.S. The government also stated, in rebuttal argument, that the jury did not have the contents of the

---

[1] The undersigned AUSA is responding to this part of the defendant's motion without the benefit of a transcript, which would be necessary to accurately recount what was said during the trial and the closing and rebuttal arguments. The undersigned AUSA's memory of the arguments on this issue are not strong or complete, and therefore this section of the opposition is based upon the AUSA's best recollection and belief of what occurred during the trial.

email before it, so it could not speculate about what the email said.

The defendant suggests that the government's arguments were prejudicial and shifted the burden of proof to the defendant. The defendant's claims have no merit and are not a sufficient basis for an acquittal or new trial.

The email the defendant sent to her uncle at the EFCC was not in evidence. By telling the jury that they should not speculate about the email's contents, the government was merely informing them of the fact that the jury had not seen the email and should not speculate about it's actual content. An argument to that effect should not be considered prejudicial or inflammatory. Nor did it shift the burden of proof to the defendant.

The government does not concede that any part of its arguments regarding the email were incorrect or improper. However, even if the Court determined that any of the government's statements regarding the letter were incorrect or improper, that still would not warrant an acquittal or new trial. The evidence against the defendant was strong. The defendant exercised her right to testify and told the jury that the defendant hit her and that she took the doctor's money against her will. The jury convicted her despite her testimony. In short, the government did not commit any errors that require overturning the jury's verdict. See U.S. v. Brown, 2007 WL 4165400 at *10 (C.A.D.C. Nov. 27, 2007)(court affirmed conviction because "many of the prosecutor's statements to which appellant now objects did not constitute clear error, and the few statements that did result in clear error were not prejudicial.").

WHEREFORE, the government respectfully requests that the defendant's motion be denied.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        United States Attorney
        D.C. Bar No.498 610

By: _____
        FREDERICK W. YETTE
        Assistant United States Attorney
        D.C. Bar No. #385391
        Federal Major Crimes Section
        555 4th Street, N.W., 4th Floor
        Washington, D.C. 20530
        (202) 353-1666
        Frederick.Yette@usdoj.gov